UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON HUCKER,<br>CDCR # P-73941<br><br>                   Plaintiff,<br><br>       vs.<br><br>J. HILL, Warden, et al.,<br><br>                Defendants. | Case No.:  3:25-cv-02533-RBM-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR EXTENSION OF TIME TO FILE AMENDED MOTION TO PROCEED IN FORMA PAUPERIS [Doc. 5];**<br><br>**(2) DENYING AS MOOT MOTION FOR RELIEF FROM JUDGMENT [Doc. 6];**<br><br>**(3) GRANTING AMENDED MOTION TO PROCEED IN FORMA PAUPERIS [Doc. 7]; and**<br><br>**(4) DISMISSING COMPLAINT WITHOUT PREJUDICE PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)** |

On September 22, 2025, Plaintiff Jason Hucker, a state prisoner proceeding pro se, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, along with a motion to proceed in forma pauperis ("IFP") and a motion to appoint counsel. (Docs. 1–3.) On January 29,

1

2026, the Court denied the IFP motion because it was not accompanied by the required certified copy of Plaintiff's inmate trust account statement, denied the motion to appoint counsel, and dismissed this action without prejudice to file a properly supported IFP motion or pay the filing fee on or before February 13, 2026.  (Doc. 4.)

On February 12, 2026, Plaintiff filed a motion for a 30-day extension of time to file an amended IFP motion, indicating that he had requested a certified copy of his inmate trust account statement.  (Doc. 5.)  On February 23, 2026, he filed a Motion for relief from the January 29, 2026 dismissal order on the basis that obtaining a certified copy of his inmate trust account statement was outside his control.  (Doc. 6.)  On March 13, 2026, Plaintiff filed an amended IFP motion which includes a certified copy of his inmate trust account statement.  (Doc. 7.)

The Court **GRANTS** Plaintiff's Motion for an extension of time to file the renewed IFP motion and finds the renewed IFP motion to be timely filed.

## I.   Renewed Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405, consisting of a $350 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).  A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months,

2

whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1)–(4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1)–(2); *Bruce*, 577 U.S. at 84.

In support of his renewed IFP motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate attested to by a CDCR trust account official. (Doc. 7 at 4.) Plaintiff had an average monthly balance of $45.93 and average monthly deposits of $296.96, with an available balance of $30.82. (*Id.*) The Court **GRANTS** Plaintiff's renewed motion to proceed IFP and assesses an initial partial filing fee of $59.39. However, *this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered.")

Because Plaintiff's renewed IFP motion is granted, the Court **DENIES** as moot his Motion for relief from the order denying his original IFP motion (Doc. 6.)

**II.    Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

**A.    Standard of Review**

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

25-cv-02533-RBM-BLM

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.    Allegations in the Complaint**

Plaintiff alleges that on May 28, 2023, while housed at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, he was told by Defendant Correctional Officer Cruz that he would be moved to cell 130 "because the institution was doing cell compactions to create a C-status section." (Doc. 1 at 5.) At that time, cell 130 was occupied by Defendant Inmate Morey, "a transgender inmate who goes by her preferred name "LeAnne."" (*Id*.) In August of 2023, Plaintiff attempted to get Cruz and Defendant Correctional Officer Randolph to let him move out of cell 130 because "Morey had become controlling, was making threatening comments about making false allegations under the Prison Rape Elimination Act (hereinafter PREA), and was sexually harassing Plaintiff by making repeated unwanted sexual advances." (*Id*. at 5–6.) Cruz and Randolph refused to allow Plaintiff to move cells even after he informed them of the situation. (*Id*.)

On September 20, 2023, Plaintiff was lying on his bunk half asleep when Morey

4

25-cv-02533-RBM-BLM

gestured for him to lower his pants. (*Id.*) Plaintiff signaled "no," but Morey yanked his pants down, painfully grabbed his penis, and began oral copulating Plaintiff. (*Id.*) When Plaintiff gently pushed Morey away, Morey bit down on Plaintiff's penis, drawing blood. (*Id.* at 6.) Plaintiff, fearing further injury, stopped resisting, but Morey stopped after about ten seconds when realizing Plaintiff was not aroused. (*Id.*) Plaintiff was "ashamed and embarrassed" and "confided in a couple of close friends what had happened," and again asked Cruz and Randolph to move him to another cell. (*Id.* at 6–7.) Plaintiff reported the assault and injury, but "staff and Defendant RN John Doe refused to record or treat Plaintiff's injury," and told him that because "it involved PREA there was nothing they could do." (*Id.* at 7.) When Plaintiff was seen by a doctor "weeks later," he was told "that the injury had gone untreated for too long and there was nothing he could do at that point, aside from providing antibiotics to prevent infection as it was clearly a bite mark wound." (*Id.*)

Plaintiff alleges that on September 25, 2023, Morey made a false PREA allegation claiming he had "raped her the week before." (*Id.* at 7–9.) Plaintiff alleges Morey was motivated to make the false charge because she was afraid Plaintiff would report Morey's sexual assault on him, would cancel delivery of a package for Morey that Plaintiff had arranged for his mother to send, and because Morey was tired of living with Plaintiff and wanted to return to single-cell status as Morey's boyfriend was returning to the yard soon. (*Id.* at 7–9, 12.) Plaintiff alleges Randolph promised Morey "that custody staff would 'look out' for her if she helped 'get rid' of Plaintiff," and that "staff" told her that if she wanted to return to single cell status "she must fit the criteria for it." (*Id.* at 7.)

Plaintiff alleges that as a result of Morey's false allegation, he was "paraded across the yard in front of hundreds of inmates" and placed in the Restricted Housing Unit ("RHU") pending the outcome of an investigation by the Investigative Services Unit ("ISU"). (*Id.* at 9.) The escorting officer "told the Plaintiff something similar to 'We all know this is bullshit, don't worry you'll be out of the hole in two weeks or so.'" (*Id.*)

///

5

25-cv-02533-RBM-BLM

Plaintiff alleges Defendant Correctional Officer John Doe, who packed and inventoried his personal property, intentionally and knowingly rewarded Morey by failing to inventory and pack all his property so Morey could keep it. (*Id*. at 9.) He alleges that Defendants Correctional Officers Wingo and Ruffino refused to conduct any form of investigation, including failing to interview the inmates Plaintiff told about the original assault, allowing him to take a lie detector test, or viewing video footage, despite the fact that Defendant Warden Hill ordered Defendants Correctional Officer Lavonia and ISU Supervising Sergeant Louie to see that the matter was properly documented and investigated. (*Id*. at 7–10.) Plaintiff filed multiple 602-inmate grievances which Defendants California Department of Corrections and Rehabilitation ("CDCR") Reviewing Authorities Moeckly, Mosely and Delgado denied in an attempt to cover-up the incident. (*Id*. at 8.) Although the grievance Plaintiff filed regarding his property was granted, no action was ever taken to restore his property or reimburse him for its loss. (*Id*.)

While housed in the RHU, Plaintiff was told by Louie, Wingo and Defendant Correctional Captain Amador they knew Morey's allegation was false and he would be cleared soon. (*Id*. at 10.) However, Hill, Amador, Louie, Livonia and Ruffino "left the Plaintiff to languish in the RHU for months despite having the ability and responsibility to intervene and mitigate the harm to … Plaintiff." (*Id*.) Plaintiff was eventually told "the investigation came back as 'unsubstantiated' meaning that there was not enough evidence to either prove or disprove the allegations against the Plaintiff," which he contends was a result of no investigation. (*Id*.) He was told by Wingo that fentanyl investigations took priority over Plaintiff's complaint that he was assaulted by Morey and Morey's complaint that Plaintiff had raped her. (*Id*. at 11.)

Plaintiff claims Defendants retaliated against him by stealing his property and transferring him out of RJD, ensuring he could not return by placing him on Morey's enemies list. (*Id*.) He states that he was scheduled to go before the parole board in March 2024, and had paid an attorney $5,000 to represent him, but had to postpone it due to the false allegation, and that now he "will not go before the Board of Parole for years because

6

of changes in the laws that adversely affect the Plaintiff." (*Id.*) He claims that but for the failure of Defendants to conduct a competent investigation and clear him of the false allegation of rape he would have been released on parole last year before the new changes in the law took effect, and that he was denied a final opportunity for a visit with his terminally ill mother who traveled from Nebraska and has since passed away. (*Id.* at 12.) He also alleges that Defendants are aware "that this is an ongoing problem within the CDCR wherein unscrupulous transgenders have weaponized the CDCR's PREA policies and use them to remove inmates that they are mad at, wish to break off their romantic relationships with, [or] as an extortion tool," and Plaintiff claims Morey admitted to another inmate that she made the false allegation in order to remove Plaintiff from her cell. (*Id.*)

### C. Discussion

Plaintiff claims violations of his rights to petition for redress of grievances, to freedom of expression, and to be free from cruel and unusual punishment. (*Id.* at 5, 9.) The Court will liberally construe the Complaint with respect to the claims presented. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that when a plaintiff appears pro se, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt with respect to what claims are raised); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (noting that the rule of liberal construction is "particularly important" in civil rights cases).

### 1. First Amendment Claims

With respect to Plaintiff's claim that he was retaliated against, "[w]ithin the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). Plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison*, 668 F.3d at 1114; *Soranno's Gasco,*

*Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act). An inmate must allege a specific causal link between a defendant's retaliatory conduct and the exercise of a constitutional right. *Pratt v. Rowland*, 65 F.3d 802, 807–08 (9th Cir. 1995).

Although prison officials may not retaliate against prisoners for filing grievances, *Bruce v. Ylst*, 351 F.3d 1283, 1289–90 (9th Cir. 2003), Plaintiff does not allege any action was taken against him in retaliation for filing grievances, or that any protected activity he engaged in was a substantial or motivating factor in any decision to act or fail to act. If Plaintiff wishes to proceed with a retaliation claim, he must set forth factual allegations identifying what action each Defendant took which he contends was retaliatory and the protected activity he engaged in which he contends triggered the retaliation.

With respect to Plaintiff's claim for denial of his right to free expression, a prisoner retains free speech rights that are not "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 129 (1977). In assessing such a claim, courts apply a four-factor test: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) whether there is an "absence of ready alternatives." *Turner v. Safley*, 482 U.S. 89–91 (1987). Plaintiff does not indicate in what manner his right to free speech or expression was denied, and his conclusory allegation of such a violation does not plausibly allege a claim. *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim).

Plaintiff also fails to plausibly allege a claim based on the Defendants' failure to respond to his complaints and grievances or conduct an adequate investigation into his allegation of assault by Morey or Morey's allegation of rape. *See Mann v. Adams*, 855

8

F.2d 639, 640 (9th Cir. 1988) ("The Supreme Court has held that . . . to obtain a protectable right an individual must have a legitimate claim of entitlement to it, [but] there is no legitimate claim of entitlement to a grievance procedure.") (citations and internal quotations marks omitted); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Ellis v. Cnty. of Kern*, 2023 WL 7005188, at *5 (E.D. Cal. 2023) (stating no claim existed for failure to investigate prisoner's alleged sexual assault).

### 2.    Eighth Amendment Claims

Plaintiff claims his right to be free from cruel and unusual punishment was violated. (Doc. 1 at 5, 9.)  He alleges that when he reported that Morey had bitten his penis, "staff and Defendant RN John Doe refused to record or treat Plaintiff's injury," and told him that because "it involved PREA there was nothing they could do." (Doc. 1 at 7.)  When he was seen by a doctor "weeks later," he was told "that the injury had gone untreated for too long and there was nothing he could do at that point, aside from providing antibiotics to prevent infection as it was clearly a bite mark wound." (*Id.*)

The Eighth Amendment's prohibition on the infliction of cruel and unusual punishment creates an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 101–03 (1976).  "[A] prison official violates the Eighth Amendment when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Second, Plaintiff must allege the prison official he seeks to hold liable had a "'sufficiently culpable state of mind.' . . .  [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.*  A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety;" he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious

9

25-cv-02533-RBM-BLM

harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference can also be shown where the chosen course of medical treatment was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

The Complaint fails to state an Eighth Amendment claim arising from the alleged failure to immediately treat Plaintiff's injury because allegations of inadequate medical treatment, medical malpractice, or even gross negligence in diagnosing a medical condition by themselves do not rise to the level of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835 ("[N]egligen[ce] in diagnosing or treating a medical condition" does not amount to deliberate indifference) (quoting *Estelle*, 429 U.S. at 106 (inadvertent failure to provide medical care, negligence or malpractice does not state an Eighth Amendment claim)). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quoting *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). However, a prisoner can only establish deliberate indifference from such a delay where there is a purposeful act or failure to act by the prison official that results in harm. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) ("A defendant must purposely ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). Plaintiff does not allege what could have been done earlier to treat his injury or how he was harmed by the delay.

With respect to Plaintiff's allegation that he requested to be moved to another cell to be protected from Morey, under the Eighth Amendment "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners," and must "take reasonable measures to guarantee the safety of [prisoners]." *Farmer*, 511 U.S. at 833. "Being violently assaulted in prison is simply not 'part of the penalty that criminal

offenders pay for their offenses against society.'" *Id*. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 347 (1981)). To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Id*. at 837.

Plaintiff alleges he was assaulted by Inmate Morey after Defendants Cruz and Randolph refused his request for a cell change despite him informing them that Morey had become "controlling," had threatened to make a false PREA allegation, and was making repeated unwanted sexual advances. (Doc. 1 at 5–6.) Plaintiff fails to allege facts showing that Cruz or Randolph knew of an *excessive risk to his safety* and disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837; *see also id*. at 835 (negligent failure to protect an inmate from harm is not actionable under § 1983); *Iqbal*, 556 U.S. at 678 (the "mere possibility of misconduct" does not state a claim). Neither does Plaintiff allege Cruz or Randolph had the authority to move him to another cell as required to satisfy the subjective component of an Eighth Amendment claim, *Farmer*, 511 U.S. at 837, but merely states they moved him into Morey's cell pursuant to a prison policy.

### 3. Remaining Claims

The Complaint does not state a due process claim for the loss of Plaintiff's personal property. *See Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (holding that because the California Tort Claims Act provides an adequate post-deprivation state remedy for the unauthorized taking of property, a negligent or intentional deprivation of a prisoner's property fails to state a 42 U.S.C. § 1983 claim).

Plaintiff has failed to state a claim regarding his transfer because inmates do not have a due process right to reside at a particular prison. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("[A] prisoner has no constitutional right to a particular classification status."); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (concluding a California prisoner does not have liberty interest in residing at a particular prison). Neither does his placement in the RHU state a claim. *Sandin v. Conner*, 515 U.S. 472, 480 (1995) ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within

25-cv-02533-RBM-BLM

the sentence imposed."); *Toussaint v. Yockey*, 722 F. 2d 1490, 1494 n. 6 (9th Cir. 1984) (recognizing that placement in a restricted housing unit "does not without more constitute cruel and unusual punishment."). The allegations that he was denied visitation and that there was an adverse effect on his parole also fail to state a claim. *See Sandin*, 515 U.S. at 487 (stating that the effect parole suitability determinations have, if any, on the duration of a sentence, "is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."); *see also Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to [parole]."); *McKune v. Lile*, 536 U.S. 24, 39 (2002) (finding no protected liberty interest in visitation rights).

To the extent Plaintiff claims Defendant Warden Hill is liable for the actions of the other Defendants because Hill ordered them to conduct an adequate investigation and they failed to do so, (Doc. 1 at 7–8), Hill's role as a supervisory official is not sufficient to support a claim under § 1983. *See Iqbal*, 556 U.S. at 677 ("[E]ach government official [in a § 1983 suit], his or her own title notwithstanding, is only liable for his or her own misconduct."); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983."). The Complaint as presently drafted fails to allege facts which if proven would support a § 1983 claim against Warden Hill in his supervisory role.

Based on the foregoing, the Complaint is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim upon which relief may be granted.

**D.     Leave to Amend**

In light of his pro se status, the Court grants Plaintiff leave to amend his Complaint in order to attempt to address the pleading deficiencies identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless it is absolutely clear that the deficiencies of the complaint could not be cured by

amendment.") (internal quotation marks omitted).

## III.   Conclusion and Orders

Accordingly, the Court:

1.      **GRANTS** Plaintiff's Motion for an extension of time to file a renewed Motion to proceed IFP (Doc. 5).

2.      **DENIES** as moot Plaintiff's Motion for relief from the Court's January 29, 2026, Order denying IFP (Doc. 6).

3.      **GRANTS** Plaintiff's Motion to Proceed IFP (Doc. 7).

4.      **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $59.39 initial filing fee as well as the remaining balance of the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).  *The initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed.*

5.      **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

6.      **DISMISSES** Plaintiff's Complaint for failing to state a § 1983 claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be

13

"considered waived if not repled.")

If Plaintiff fails to timely amend, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED**

Dated:  May 7, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

14

25-cv-02533-RBM-BLM